## HENRY J. HORN *vs.* WESTERN LAND ASSOCIATION.

### October 12, 1875.

Pleading—Admission of Agent's Authority.—An averment in an answer that an agent "had no authority to appoint or employ an attorney for his principal until a vacancy should exist in that position," is an admission of such authority in case such vacancy exists.

Principal and Agent—Hiring for a Year.—An appointment of an attorney "at a salary of $1,000.00 per year, payable quarterly," and an acceptance of such appointment "upon the terms offered," constitute a consummated contract of employment for at least a year. Neither party, without the other's consent, can lawfully rescind such contract, without cause, during the year.

Same—Agent's Remedy for Breach of Contract.—In case such contract is terminated by a breach on the part of the employer, the employé, continuing ready and able to perform on his part, is presumptively entitled to recover as damages, on account of such breach, the stipulated yearly salary and interest.

Same—Agent's Earnings in Other Employment to be Pleaded as Matter of Defence.—If, after such breach, plaintiff obtains other employment and compensation, inconsistent with his engagement under the contract, that is affirmative matter in recoupment, which it is incumbent on the defendant to set up and establish.

The defendant is a Pennsylvania corporation, having its

principal office at Philadelphia. The plaintiff, an attorney at law, alleges in his complaint that on April 5, 1869, the defendant's executive committee, having due authority from defendant so to do, passed and subscribed the following resolution : " Resolved, that Henry J. Horn, Esq., of St. Paul, Minnesota, be, and is hereby, appointed attorney for the Western Land Association, at a salary of one thousand dollars per year, payable quarterly," and transmitted an attested copy thereof to plaintiff, who, on April 13, 1869, accepted such appointment, and was retained and employed by defendant as such attorney, by the year, at the salary of $1,000.00 per year, payable quarterly ; that plaintiff entered on such employment, and performed valuable services for defendant during the year 1869, and has performed all the services ever required of him by defendant as such attorney, and has always been ready and willing to perform for defendant all the services required of him as such attorney, as defendant well knew, but that no part of said salary has been paid, etc. Judgment is demanded for $1,000.00, with interest on each quarterly instalment from the date when it became payable.

The answer admits the adoption of the resolution, and that a copy was transmitted to plaintiff, and alleges that the resolution was adopted by the committee under a mistake of fact, the committee then believing that James Smith, jr., who was then the attorney for the defendant, had resigned and was about to resign his position, whereas he had not resigned, and was not about to resign it ; that the committee " had no authority from the defendant, or otherwise, to appoint or employ an attorney for the defendant until a vacancy should exist in that position." The answer also sets out certain resolutions of the committee, which are stated below, and alleges that plaintiff was notified of them immediately upon their adoption.

At the trial in the district court for Ramsey county, before Wilkin, J., it appeared that on April 13, 1869, on receipt

of a copy of the resolution of April 5, plaintiff sent to defendant a letter, in which he acknowledged the appointment, and added: "I accept the appointment upon the terms offered." It also appeared that on July 29, 1868, James Smith, jr., was appointed as defendant's attorney; that in the spring of 1869 he stated to W. L. Banning, one of defendant's directors, that he thought he should resign. At the meeting on April 5 Mr. Banning stated to the committee that Mr. Smith had resigned, or was about immediately to resign, and requested plaintiff's appointment, whereupon the resolution of that date was passed. After that date Mr. Smith did no business for defendant. He was advised of plaintiff's appointment about the time of plaintiff's acceptance of it. On June 1, 1869, the committee passed a resolution reciting the passage of the former resolution, and that it had been subsequently ascertained that Mr. Smith had not resigned, and suspending the appointment of plaintiff until Mr. Smith should have made his resignation. On receipt of a copy of this resolution plaintiff transmitted to defendant a letter from Mr. Smith, dated June 28, 1869, as follows: "I learn that the resignation of my position as attorney for said association has not yet been accepted. I feel confident that the best interests of all concerned (especially my own) will be promoted by the acceptance of my resignation, to take effect at the date of the appointment of Henry J. Horn, Esq." On July 21, 1869, the defendant's committee adopted a resolution "that the resignation of Mr. Smith be accepted, the resignation to take effect on August 1, 1869," and "that Luther Mendenhall be, and hereby is, appointed the attorney of the company, to reside at Duluth, the appointment to take effect from August 1, 1869, and that all former appointments to said office are hereby revoked and repealed." A copy of this resolution was received by plaintiff on October 4, 1869. It also appeared that shortly after his appointment the plaintiff was frequently consulted by the defendant's agent

in Minnesota in regard to matters connected with the defendant's interests.

The court instructed the jury, *inter alia*, that if the resolution of April 5 was passed in consequence of Mr. Banning's statement to the effect that Mr. Smith desired to resign his position as attorney, and if Mr. Banning was authorized by Mr. Smith to make such statement to the committee, and Mr. Smith's actual resignation was afterwards sent in, then the resolution would, in such case, amount to an acceptance of a resignation of Mr. Smith, and Mr. Horn's acceptance would effect a contract between him and defendant. The court also left it to the jury to find whether there was ever a mutual understanding between the parties that the contract was abandoned. The jury found for the plaintiff for the full amount claimed by him, a new trial was refused, and defendant appealed.

*J. D. Ensign* and *Gilman, Clough & Lane*, for appellant.

*Geo. L. Otis*, for respondent.

CORNELL, J. The alleged cause of action against defendant is a contract, evidenced by a resolution of its executive committee or board, appointing plaintiff as its attorney, " at a salary of one thousand dollars ($1,000.00) per year, payable quarterly," and plaintiff's letter " accepting the appointment upon the terms offered." That the transmission of this resolution by defendant, and the written acceptance of the offer it contained by plaintiff, constituted a complete and consummated contract, admits of no reasonable doubt. *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 How. 390. That the executive board had the requisite authority from defendant to make this appointment, and contract in case a vacancy then existed in such position, is an admitted fact upon the pleadings. Whether the vacancy existed was a question of fact properly and correctly submitted by the court to the jury, and by it determined in favor of the plaintiff. So, as to the alleged abandonment of the contract by both parties, or by the defendant with the acquies-

cence or consent of plaintiff, this was a matter for the jury to determine upon the evidence.

The remaining questions relate to the construction of the contract, the right of the defendant to rescind it, and the amount which plaintiff was entitled to recover. The contract, according to its terms, fairly imported an obligation on the part of plaintiff to perform for defendant, and to hold himself ready to perform, whenever called upon, such professional services as an attorney as defendant might require in and about its business during the period of at least a year, and the reciprocal obligation on the part of defendant to pay for such yearly retainer and services the stipulated gross sum of $1,000.00, payable in quarterly instalments. The contract of employment was *by the year*, at a fixed salary for such period, and not one for an indefinite period, *at the rate* of so much a year. This construction accords with what must reasonably be supposed to have been the intention of the parties, considering the nature of the employment and the character of the services agreed to be rendered. *Emmens* v. *Elderton*, 4 H. L. Cas. 625. Without consent, or without just cause, neither party was at liberty to rescind the contract during the year. If plaintiff entered upon its performance, and continued during that period ready and willing to perform on his part, and did not, by any act or engagement incompatible therewith, incapacitate himself from its performance, then he was entitled to recover the stipulated sum agreed upon as compensation for his services.

If, as is claimed by defendant, the plaintiff, during the time, obtained other employment and compensation inconsistent with his engagement under the contract, that was affirmative matter in recoupment of his claim, which it was incumbent on defendant to set up and establish. *Williams* v. *Anderson*, 9 Minn. 50; *Costigan* v. *Mohawk & Hudson R. Co.*, 2 Denio, 609. The case seems to have been disposed of in the court below in accordance with these views, and hence the order denying a new trial must be affirmed.