# FARELLA ZELLER v. PRIOR LAKE PUBLIC SCHOOLS, INDEPENDENT SCHOOL DISTRICT NO. 719, SCOTT COUNTY.

108 N. W. (2d) 602.

March 10, 1961—No. 37,957.

*Lindmeyer & Lindmeyer, Moonan & Moonan,* and *John E. Castor,* for appellant.

*Syrus S. Kouri* and *Andrew J. Sato,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action against Prior Lake Public Schools, Independent School District No. 719, Scott County, by Farella Zeller, for breach of a teacher's continuing contract under which she claims she was entitled to employment as a teacher by defendant for the 1958-1959 school term at a salary of $4,275 for the term. Defendant denied that the contract was in force for the term described and alleged that on March 12, 1958, plaintiff was notified in writing of its action in not reelecting her for such term and its reasons therefor; and of her right to request a hearing thereon before the board as provided by law. It contends that plaintiff failed to request a hearing within 10 days of such notice and that in consequence, under Minn. St. 1957, § 130.18, subd. 3,[1] her contract ended with the close of the 1957-1958 school term.

---

[1]Minn. St. 1957, § 130.18, subd. 3, (now Minn. St. 125.12, subd. 3) provided: "The teacher's contract shall remain in full force and effect, except as modified by mutual consent of the school board and the teacher, until terminated by a majority roll call vote of the full membership of the school board, or by the written resignation of the teacher, before April 1. * * * before a teacher's contract is terminated by the school board, the board shall notify the teacher in writing and state its reason for the *proposed termination.* Within ten days after receipt of this notification the teacher may make a written request for a hearing before the board and it shall be granted before final action is taken. Such termination shall take effect at the close of the school year in which the contract is terminated in the manner aforesaid." (Italics supplied.)

The notice to plaintiff from defendant dated March 12, 1958, was as follows:

"Mrs. Farella Zeller
Minneapolis, Minn.

"Dear Mrs. Zeller:

"The school board met on Monday evening, March 10th, for the purpose of considering contracts for the school year 1958-59.

"*At this meeting the school board did not re-elect you for the next school year.* It was the consensus of opinion that your work did not measure up to the standards that are required in this school system. Your re-election for the past two years has been in doubt each time it was brought to the attention of the board. We were all hoping that your work would improve as time went on, but such has not been the case. The number of complaints from parents has been steadily increasing, and a number of them object to having their children in your room, because they feel that they will not receive satisfactory training and make desirable progress.

\* \* \* \* \*

"Under the State Law you may request a hearing with the school board, if you so desire, and if you feel that you are not being treated fairly. *In your case, I do not believe it would be of any help to you. The next board meeting is on Monday evening, March 24th.*

> "Sincerely,
> L. E. Wood—Sup't.
> Geo. Muelken—Clerk" (Italics supplied.)

Within 10 days of March 12, 1958, defendant received the following communication from plaintiff:

"Mr. George Muelken
Clerk of School
Prior Lake, Minnesota

"Dear Mr. Muelken:

"The letter which I have received from the board is a very great injustice to me.

"I've worked diligently all these years, my pupils have been up to

par in their work and I have never wasted time in the kitchen or kept the children on the playground overtime.

\* \* \* \* \*

"I authentically can say that my work in my room is up with any of the other teachers.\* \* \*

"*I would appreciate a reconsideration.* Thank you.

"Sincerely

Mrs. Zeller." (Italics supplied.)

Plaintiff attended the meeting of March 24, 1958, referred to in the March 12, 1958, notice. It was called solely to consider designs for a new school building. At this meeting two representatives of the Minnesota Education Association appeared in connection with other matters. They had not been requested to represent plaintiff, and did not appear in her behalf for this reason. Plaintiff was not called upon to state her case and the board promptly proceeded to other business for which the meeting had been called. No action with respect to the termination of plaintiff's contract was taken, either at this meeting or at any time thereafter.

On May 29, 1958, plaintiff instituted the present action. It was reached for trial on January 14, 1959. In pretrial interrogatories submitted to defendant by plaintiff and answered on its behalf by C. Le-Roy Hobart, president of its school board, the following appears:

"Q. Was the plaintiff notified in writing as to the alleged termination of plaintiff's contract prior to April 1, 1958, but after March 24, 1958?"

"A. No. Notified March 12, 1958, of action of Board not to reelect Mrs. Zeller, and of her right to request a hearing. No request received; action of Board was definite, so no further notice seemed necessary."

The trial court found that plaintiff was employed under a continuing contract for the 1957-1958 school year; that the applicable salary schedule therefor entitled her to $4,200 for the 1958-1959 school term; that plaintiff had received the notice of March 12, 1958, and that she had answered it by the letter above set forth and that defendant had received such answer within 10 days thereof; and that she had re-

ceived no other notice of any kind and at all times had held herself ready and willing to perform the contract. In its conclusions of law, the court determined:

"That said written notice from the defendant school board to the plaintiff was notice of actual termination of plaintiff's contract rather than notice of proposed termination, and said contract between plaintiff and defendant is still in force and effect."

Based thereon judgment was ordered for plaintiff in the sum of $4,200 representing salary for the 1958-1959 school term. A memorandum attached to the findings sets forth that:

"Under and pursuant to Section 130.18, Subdivision 3, Minnesota Statutes Annotated, it is expressly provided that before a teacher's contract may be terminated by a school board the school board shall notify the teacher in writing and state its reasons for the proposed termination. Within ten days after receipt of this notification the teacher may make a written request for a hearing before the board and it shall be granted before final action is taken.

"Apparently the statute means what it says, and a condition precedent rested upon the school board to first give notice in writing to the plaintiff school teacher, and that notice would have to be notice of proposed termination of contract and not notice of termination. Here the board acted first by termination and then gave notice of reasons for so doing, with incidental notice that plaintiff school teacher could demand a hearing within ten days. Such notice on the part of the school board was inadequate and insufficient, and was an abortive attempt to comply with the statute."

The present appeal is from an order denying defendant's motion for a new trial. Defendant asserts that, in the absence of plaintiff's written request for a hearing within 10 days of the March 12, 1958, notice, the contract terminated with the end of the 1957-1958 school term. It contends further that plaintiff's letter, which the court found defendant had received within such 10-day period, was not such a request for a hearing; and that the evidence fails to sustain the finding that plaintiff at all times had held herself ready and willing to perform the contract.

■ Both parties agree that their respective rights are governed by Minn. St. 1957, § 130.18, subd. 3, (now Minn. St. 125.12, subd. 3). This section provides that, as a prerequisite to termination of a contract such as plaintiff's by a school board, the board shall notify the teacher of the proposed termination and state its reasons therefor. It also provides that, within 10 days after receipt of such a notification, the teacher may make written request for a hearing thereon before the board and that such a request must be granted before the board may take final action in the case. April 1 is made the deadline for termination of the contract, and it would follow that sufficient time must be provided for in the notice of proposed termination to permit accomplishment of such prerequisites before such deadline.

In construing this section, this court held that a school board must comply strictly with its provisions. Hueman v. Independent School Dist. No. 77, 243 Minn. 190, 67 N. W. (2d) 38.

■ It is clear that in the instant case defendant did not comply with the requirements of § 130.18, subd. 3, in attempting to terminate plaintiff's contract. The notice of March 12, 1958, did not set forth that defendant *proposed* to terminate plaintiff's contract. It did not notify her that *within 10 days after its receipt* she might make written request for a hearing with the board which it was required to grant before it could take final action in the matter. The notice advised her definitely that she had not been reelected for the ensuing term. While it notified her generally that she might request a hearing with the board, it also stated that in her case such a request would be of no help to her. When such language is considered in its entirety, it cannot be construed as anything less than a notice to plaintiff that her contract was at an end.

■ Further, even if the notice of March 12, 1958, be construed as a notice of *proposed* termination, the record is clear that within 10 days of its receipt plaintiff requested a hearing thereon and that no such hearing was granted. While plaintiff's letter to defendant did not request a *hearing* in precise language, it did state that plaintiff "would appreciate a reconsideration." The notice of March 12, 1958, implied that if a request for hearing were made the meeting set for March 24,

1958, would serve for such purpose, and believing that her notice was adequate and that she had complied with the statutory requirements, plaintiff appeared at such meeting. No action on the termination of her contract was taken then or at any time subsequent thereto. Funk & Wagnalls New Standard Dictionary (1945), p. 2065, defines "reconsider" as "to consider again; review with care, especially with a view to a reversal of previous action"; and plaintiff's use of the term "reconsideration" in her letter to the board must have indicated to it quite clearly that she desired the hearing to which she was entitled under § 130.18, subd. 3. The failure of the board to grant her request in this respect was contrary to the statute and prevented final termination of her contract. It would follow that the trial court was correct in holding that the contract had not been terminated by the proceedings described and remained in effect for the 1958-1959 term.

■ Defendant asserts that, even if there was a breach of contract, under principles of mitigation of damages, plaintiff would not be entitled to full compensation for this period because she had not sought other employment for the 1958-1959 term. It submitted no evidence that she had refused to accept or that she could have found other employment of a similar character in the locality. Ordinarily, a teacher under contract wrongfully discharged need not accept employment of a different or inferior kind, or in a different locality in order to mitigate damages. 15 Am. Jur., Damages, § 33. Here plaintiff testified that she had held herself available to perform the services required of her under the contract, and no evidence was submitted to controvert this. The measure of damages for breach of an employment contract is the compensation which an employee who has been wrongfully discharged would have received had the contract been carried out according to its terms. 11 Dunnell, Dig. (3 ed.) § 5850, and cases cited. The burden of proof to establish that such an employee could have earned or did earn compensation in mitigation of damages rests upon the party whose wrongful actions caused the breach and who claims mitigation of damages as a defense in an action based upon such breach. This rule is expressed in Annotation, 17 A. L. R. (2d) 968, 978, as follows:

"By the overwhelming weight of authority in the United States the burden of proving any benefit that flows to the discharged employee is on the employer in an action for lost wages. Another way of stating this rule is that prima facie a wrongfully discharged employee is entitled to full wages for the term of the contract. But however variously it may be expressed, the present rule, except in one jurisdiction, is that an employer must show affirmatively, to reduce damages, that the discharged employee could or did have other earnings subsequent to the wrongful discharge."

Horn v. Western Land Assn. 22 Minn. 233; Bennett v. Morton, 46 Minn. 113, 48 N. W. 678; McMullan v. Dickinson Co. 60 Minn. 156, 62 N. W. 120, 27 L. R. A. 409, 51 A. S. R. 511; Beissel v. Vermillion Farmers Elev. Co. 102 Minn. 229, 113 N. W. 575, 12 L.R.A. (N.S.) 403; Cooper v. Stronge & Warner Co. 111 Minn. 177, 126 N. W. 541, 27 L.R.A. (N.S.) 1011, 20 Ann. Cas. 663; Schommer v. Flour City Ornamental Iron Works, 129 Minn. 244, 152 N. W. 535; Schisler v. Perfection Milker Co. 193 Minn. 160, 258 N. W. 17. See, also, Farrell v. School Dist. 98 Mich. 43, 56 N. W. 1053; State ex rel. Freeman v. Sierra County Bd. of Education, 49 N. Mex. 54, 157 P. (2d) 234; School Dist. v. McDonald, 68 Neb. 610, 94 N. W. 829, rehearing denied, 68 Neb. 623, 97 N. W. 584; School Directors v. Orr, 88 Ill. App. 648; Haddon School Twp. v. Willis, 209 Ind. 356, 199 N. E. 251; Kring v. School Dist. 105 Neb. 864, 182 N. W. 481; Wood v. Consolidated School Dist. No. 13 (Mo. App.) 7 S. W. (2d) 1018.

These citations clearly support the trial court's determination that plaintiff was entitled to full compensation for the 1958-1959 school term in accordance with the terms of the contract.

Affirmed.