BLOOD, Respondent v. SPRING CREEK NUMBER 12, COMMON SCHOOL DISTRICT, Appellant

(105 N.W.2d 545)

(File No. 9847. Opinion filed November 2, 1960)

**James Clapp**, Rapid City, for Defendant and Appellant.

**Gunderson, Farrar, Carrell & Aldrich,** Rapid City, for Plaintiff and Respondent.

HANSON, J. This is an action by a teacher to recover damages against a common school district for breach of an alleged teaching contract. After trial to the court, without a jury, judgment was entered in favor of plaintiff in the amount of $1,650 together with interest thereon from June 1, 1956. The school district appeals.

The plaintiff, Virginia Blood, was employed to teach one of the rural schools under the jurisdiction of the defendant Spring Creek No. 12 Common School District for the school years 1953-54 and 1954-55. Written contracts were executed for both years. According to the 1954-55 contract plaintiff's salary for the nine-month school term was $2,250. Plaintiff was not offered a new contract for the year 1955-56 nor was she notified in writing on or before the 1st day of April 1955 of the school board's determination not to renew her contract for the ensuing school year.

On the opening day of the 1955-56 school term Mrs. Blood appeared at her former school and offered to teach thereat. Her offered services were refused and the school was

taught by another teacher who had previously been employed by the board. Plaintiff testified she was unable to secure employment elsewhere in the community as a teacher until February 20, 1956. Thereafter she earned $600 during the balance of the school year.

Plaintiff contends her 1954-55 teaching contract was renewed for the ensuing school year by operation of the Teacher's Continuing Contract Law, SDC 1960 Supp. 15.3810. So far as material this law provides:

> "Any teacher, properly qualified by the South Dakota State Department of Public Instruction, who has been employed by any board of education of any school district in this state for at least two successive years, during any school year shall be notified in writing by the board of education on or before the first day of April in the school year in which he or she has been employed to teach of the board's determination not to renew the teacher's contract for the ensuing school year, and failure to give such written notice on or before said date shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. Different terms and conditions may be mutually agreed upon by the board and teacher at any later time.

> "After an offer has been created under the provisions hereof the board must by May first of the ensuing school year submit a written contract of employment for the coming school year to the teacher and notify such teacher that the offer to accept such contract must be accepted within fifteen days by a signing of such contract by the teacher. If such teacher does not sign such contract within fifteen days the offer created under the provisions hereof is hereby deemed to be revoked."

■■ One obvious purpose of the above law was to eliminate uncertainty and possible controversy regarding the

future status of a teacher and a school. Sirmon v. Roberts, 209 Ark. 586, 191 S.W.2d 824. It is apparent therefrom that nonaction on the part of a school board on or before April 1st may result in the automatic renewal of a teacher's current contract for the succeeding year. Acceptance by a teacher is required only when the school board submits a written contract to the teacher for the ensuing year on or before May 1st. When the school board fails to notify a teacher of its decision not to re-employ a teacher is not statutorily obligated to give the school board notice of acceptance. A cntract of employment for the succeeding year arises and exists by operation of law.

■■ There is some evidence to the effect that members of the school board met informally and decided not to re-employ Mrs. Blood for the succeeding year. The chairman of the board testified he notified plaintiff of such decision by phone. Receipt of such phone call was denied. In any event such notification would be ineffectual. Under our statute notice of a school board's determination not to re-employ must be in writing and given to the teacher on or before the 1st of April. In the absence of a waiver or other legal cause the giving of such statutory notice is necessary if automatic renewal of a teacher's contract is to be avoided. "Where the statute requiring service of a notice not to re-employ fails to prescribe the contents of the notice, any language which may be understood to mean that the teacher is not to be re-employed for the succeeding year is sufficient. Statutes sometimes prescribe the form and contents of the notice. The notice must be in writing where the statute so directs. The notice need not to be in the exact language of the statute, but substantial compliance with the statute is sufficient. The notice is sufficient if it fairly informs the teacher that he will not be employed for the succeeding year." 78 C.J.S. Schools and School Districts § 197, p. 1066. The school board here did not substantially comply with the giving of the statutory notice of their intention not to re-employ plaintiff for the ensuing year. Consequently plaintiff's 1954-55 contract to teach was automatically renewed for the school year 1955-56.

■ It was unnecessary for plaintiff to allege she exhausted the administrative remedy of appeal provided in SDC 15.2033 before commencing action. This section of our school law provides for an appeal by any person aggrieved by any "decision" of a school board. The record here fails to disclose any "decision" made by the school board respecting plaintiff's employment for the ensuing year from which plaintiff could have appealed. Her contract for the year 1955-56 was created by operation of law and her cause of action arose and accrued when the school board breached that contract by preventing plaintiff from performing her duties thereunder as a teacher on the opening day of the 1955-56 school year. Brinkmann v. Common School Dist. No. 27, Mo., 238 S.W.2d 1; McBride v. School Dist. No. 2, 88 Mont. 110, 290 P. 252.

■ Plaintiff was the holder of a valid certificate and qualified to teach in any elementary school in this state at all times material to her cause of action. It was immaterial that her Elementary First Grade Certificate expired on July 1, 1955. This could have been renewed. Instead it was replaced, after plaintiff attended summer school, by a State General Elementary Certificate issued on August 22, 1955. This higher certificate did not expire until July 1, 1957. It follows that Mrs. Blood was the holder of a valid certificate to teach during the entire school year of 1954-55 when her contract was renewed by operation of law. She was likewise the holder of a valid certificate to teach during the entire school year of 1955-56 for which she claims damages for breach of contract. Plaintiff did not teach, or attempt to teach, during the period her certificate expired. Nor does she claim any wages for teaching during such period. Therefore, the provisions of SDC 15.3801 and SDC 15.3807, as amended, to the effect that no person shall be allowed to teach in this state nor draw wages as a public school teacher, who does not have a valid unexpired teacher's certificate, has no application here.

■ In an action for breach of contract by a public school teacher the measure of damages is the wages

which would have been paid under the contract alleged to have been breached, less any sum actually earned, or which might have been earned, by plaintiff by the exercise of reasonable diligence in seeking and obtaining other similar employment. 47 Am.Jur., Schools, § 145, p. 402. In accord with this rule the trial court granted plaintiff damages for wages in the amount of $2,250 which would have been paid under the breached contract less the sum of $600 actually earned as a teacher during the 1955-56 school year.

■■■■ Plaintiff testified she was unable to obtain other employment as a teacher until February, 1956. She did not testify as to the efforts, if any, by her to obtain other employment. She was under no obligation to do so. The burden of proving plaintiff might have obtained other employment earlier in the year in minimization of damages was "upon the school district, and not upon the teacher." Tate v. School Dist. No. 11 of Gentry County, 324 Mo. 477, 23 S.W.2d 1013, 1028, 70 A.L.R. 771. In this regard the school district called Amos Groethe as its witness. Mr. Groethe testified as to his education, qualifications and long experience as a teacher and educator; that he had served as County Superintendent of Schools of Pennington County, wherein the defendant school is located, from 1933 to 1937, as County Auditor from 1937 to 1941, and again as County Superintendent of Schools from 1941 to the date of the trial. He further testified he was acquainted with Mrs. Blood, as a teacher, since 1952; and that he had knowledge of the demand for elementary grade teachers in Pennington County on September 1, 1955. Based upon such considerations the witness was then asked if he had "formed an opinion as to whether or not the plaintiff could have secured employment at that time (September 1, 1955) as a teacher of the common school districts in this vicinity by the exercise of reasonable diligence?" The trial court sustained plaintiff's objection on "foundational grounds" and the witness was not allowed to answer.

Mr. Groethe was not asked a hypothetical question based on an assumed statement of facts. The question called for an opinion based upon firsthand knowledge. He could have testified to those facts in response to direct questions. Such testimony would no doubt be more effective and convincing than his opinion. Nevertheless his opinion was admissible. Its foundation could be tested by cross-examination. Its credibility, weight and value were for the trier of facts. The question related to a material issue in the case and the witness should have been allowed to answer. The ruling of the court, under the circumstances, in our opinion, constituted prejudicial error.

Accordingly, the judgment of the lower court is affirmed as to defendant's liability for breach of contract, but is reversed and remanded for retrial on the question of damages.

All the Judges concur.