Joseph M. MILLER, Plaintiff and Respondent,

v.

SOUTH BEND SPECIAL SCHOOL DISTRICT NO. I, McHENRY COUNTY, North Dakota, Defendant and Appellant.

No. 8082.

Supreme Court of North Dakota.

Nov. 7, 1963.

Joseph C. McIntee, Towner, and Duffy & Haugland, Devils Lake, for defendant and appellant.

Waldron & Kenner, Minot, for plaintiff and respondent.

ERICKSTAD, Judge.

This is an appeal from the judgment granted for damages to the plaintiff for breach of his teacher's contract. The case was tried to the court without a jury. Trial de novo is demanded in the Supreme Court.

The plaintiff alleges that on or about August 31, 1961, he entered into a written

contract with the defendant school district to teach in the district for a term of nine months; that he commenced teaching on September 4, 1961, complied with the terms and conditions of the said contract, and at all times remained ready, willing, and able to perform in accordance with the contract; but that on January 3, 1962, the district, through its president, served a notice informing him that his contract was terminated; and that, although he reported for duty thereafter, he was not given work to perform. He further contends that by this action he was damaged in the sum of $2,777.75.

The defendant admits the existence of the written contract but denies that the plaintiff has at all times complied with the terms and conditions of its agreement with the plaintiff. As an affirmative defense, the defendant alleges that prior to the execution of the written contract, the plaintiff was informed that the district had adopted rules entitled "Philosophy and School Policies," that one provision thereof required that all teachers reside in Velva, North Dakota, that these policies would be a part of any contract entered into between the parties, and that the plaintiff agreed to this particular provision before signing the contract. It is further contended that the plaintiff committed a breach of the contract by moving his residence from the city of Velva to the city of Minot during the term of the contract.

The plaintiff generally denies the aforesaid allegations of the defendant and asserts that the instrument entitled "Philosophy and School Policies" was not exhibited to him until late in December, 1961, and that prior to that time the plaintiff was not informed that he must reside in the city of Velva.

The trial court, acting without a jury, found for the plaintiff and ordered judgment against the defendant in the sum of $2,500.00, plus costs and disbursements, or a total judgment of $2,540.80. The defendant appeals from the judgment and asks for a trial de novo. The appellant raises the following three issues on appeal.

1. Was the school board justified in terminating the plaintiff's contract?

2. Did the plaintiff make a good faith effort to mitigate damages?

3. Was the trial court unduly restrictive in admission of evidence relating to the plaintiff's good faith in mitigating damages?

A review of the record discloses that the plaintiff entered into a contract to teach for the defendant school district for a term of nine months; that the contract was dated August 31, 1961; that he commenced his duties under the contract on September 4, 1961; that he moved his family to the city of Velva about that time and continued to reside in Velva until sometime in November, 1961, when he moved his family to the city of Minot; that thereafter a number of meetings of the school board of the district were held which the plaintiff attended and at which he was asked to return to Velva to live but that he refused to do so; that the plaintiff was thereafter served a notice of a hearing to be held on December 28, 1961, to determine whether he should be discharged and his contract terminated for having moved his residence from the city of Velva to the city of Minot in violation of the "Philosophy and School Policies"; that such a hearing, which the plaintiff attended, was duly held and resulted in action on the part of the said board terminating the plaintiff's contract; that notice of such action was duly served on the plaintiff on January 3, 1962; and that the defendant returned to the school on a few subsequent days ready, willing, and able to perform his part of the contract, but on not being permitted to do so, he did not return thereafter.

On April 5, 1962, the plaintiff commenced this action for money damages for breach of the contract.

There is conflicting testimony as to whether the plaintiff knew prior to the execution

of the contract of the provision in the "Philosophy and School Policies" which required a teacher to reside in Velva and prohibited a teacher from commuting to Velva from some other community.

The defendant contends in connection with issue No. 1 that it was justified in terminating the plaintiff's contract on the grounds that the plaintiff violated the "Philosophy and School Policies."

The pertinent provision thereof reads as follows:

"E. Residence.

"1. All teachers in the Velva Public School will reside in the City of Velva and under no condition will commute between Velva and any surrounding community."

An examination of the contract does not disclose an incorporation therein of any part of the "Philosophy and School Policies." That being the case, the school district must base its action on something other than the written contract, particularly in light of the fact that the evidence appears to us to be insufficient to support the burden of proving the contentions of the defendant that the plaintiff knew of the residence requirement and agreed thereto prior to or at the time of the execution of the contract.

The contract is contained on the face of one sheet of paper, with no provision for termination of the contract contained therein. On the reverse side of the contract under the direction to "Read Carefully," under subtitle "General," is contained the following:

"The school board may dismiss a teacher at any time for plain violation of contract, gross immorality, or flagrant neglect of duty. (15–25–08, NDCC 1961)".

The afore described section actually applied to a common school district. The defendant had been classified prior to July 1, 1961, as a special school district and not as a common school district.

In any case, that section and chapter were repealed by section 89 of Chapter 158 of the Laws of North Dakota for 1961, and, thus, the school district for the purposes of this case is governed by Chapter 15–29 of the North Dakota Century Code, which, in general, provides for the powers and duties of public school districts and their officers.

Pertinent among the statutory provisions of the 1961 Act are the following:

"15–29–07. Supervision of schools. —The schools of a public school district shall be under the supervision of the school board which may appoint a school superintendent to supervise the schools within the district. * * *

"15–29–08. General powers and duties of school board.—The powers and duties of the school board of a public school district shall be as follows:

* * *

"10. To contract with, employ, and pay all teachers in the schools and to dismiss and remove for cause any teacher when the interests of the school may require * * *.

* * *

"13. To adopt, alter, and repeal, when it deems it expedient, rules and regulations for the reception, organization, grading, government, and instruction of pupils * * *." Laws of North Dakota for 1961, Sec. 89, Chap. 158.

This court, on numerous occasions, has held that the law existing when a contract is executed becames a part thereof. State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118, 86 A.L.R. 1523, followed in Baird v. Gray, 63 N.D. 640, 249 N.W. 718; Werner v. Riebe, 70 N.D. 533, 296 N.W. 422, 156 A.L.R. 1254; Dunham Lumber Co. v. Gresz, 71 N.D. 491, 2 N.W.2d 175, 141 A.L.R. 60.

▮ Thus, the aforementioned statutes authorizing the school districts to adopt

rules and permitting the districts to discharge a teacher for cause when the interests of the school may require it, were as much a part of the contract as though they had been written therein and agreed thereto by the teacher.

■ That being the case, it becomes important to distinguish between a cause for discharge and termination of a contract based on a rule and a cause for discharge and termination of a contract not based on a rule. In the latter case, the misconduct must be of such a serious nature that, standing alone, it would constitute cause.

It is obvious that the misconduct complained of in the instant case would not constitute such cause, standing alone, as would justify the discharge of the teacher and a termination of the contract.

■ For conduct in violation of a rule to constitute cause when it would not be sufficient cause if not in violation of a rule, the rule must be incorporated, by reference or otherwise, in the contract, or it must be shown by the school district that the teacher had knowledge of the rule at the time of execution of the contract.

■ In the instant case we do not believe that the school district has sustained the burden of proving that the plaintiff teacher knew of the residence rule at the time of execution of the contract. Had the district intended that its "Philosophy and School Policies" constitute binding rules, it would have been a simple matter for the district to have incorporated the same, either by reference or otherwise, in its contract and to have provided that a violation of any of said rules would constitute grounds for discharge of the teacher and termination of the teacher's contract. We therefore conclude that where a public school district failed to incorporate, by reference or otherwise, in a teacher's contract rules adopted by the district for the operation of its schools, which rules included a requirement that a teacher reside in a certain city in the district, and where the district failed to sustain the burden of proving that the teacher knew of the rules at the time of the execution of the contract, a discharge of a teacher and termination of his contract for the reason that the teacher moved his residence to a city outside the district is not justifiable cause for discharge and termination of the contract and does not constitute a good affirmative defense to an action by said teacher for breach of contract by the said district.

We shall now proceed to a consideration of the other issues.

■ In an action for breach of contract by a public school teacher, the measure of damages is the wages which would have been paid under the contract alleged to have been breached, less any sum actually earned or which might have been earned by plaintiff by the exercise of reasonable diligence in seeking and obtaining other similar employment. Blood v. Spring Creek Number 12, Common School Dist., 78 S.D. 580, 105 N.W.2d 545, at 548.

In an attempt to comply with this rule, the trial court granted the plaintiff damages for the wages he would have been paid under the contract from the date of discharge to the end of the term of the contract less the amount of money he earned to the date of the trial and the money he could reasonably have earned at the same rate to the end of the term for the part time employment he had parking cars in a parking lot in Minot.

■ The appellant refers this court to a portion of the transcript of the trial court proceedings relating to cross-examination of the plaintiff in an attempt to show that the plaintiff did not exercise reasonable diligence in seeking and obtaining other similar employment. Although an examination of the referred portions of the transcript does not indicate that the plaintiff exerted every possible ef-

fort, in light of the trial court's findings, which are entitled to appreciable weight, we are not prepared to say that he did not exercise a reasonable effort where the evidence indicates that he sought employment through the same source from which he secured his employment originally with the defendant school district and where the record also discloses that he applied at the office of the State Employment Service in Minot for employment, in which latter case he did not restrict his application for work to the teaching profession.

■ In the case of Blood v. Spring Creek Number 12, Common School Dist., supra, the South Dakota court said:

> "Plaintiff testified she was unable to obtain other employment as a teacher until February, 1956. She did not testify as to the efforts, if any, by her to obtain other employment. She was under no obligation to do so. The burden of proving plaintiff might have obtained other employment earlier in the year in minimization of damages was 'upon the school district, and not upon the teacher.' Tate v. School Dist. No. 11 of Gentry County, 324 Mo. 477, 23 S.W.2d 1013, 1028, 70 A.L.R. 771."

As the school district must assume the burden of proving that a teacher has failed to exercise reasonable diligence in seeking employment to minimize his damages on a breach of his contract by the school district, a careful review of all the evidence does not convince us that this burden has been sustained in this case. We therefore find for the respondent teacher on this issue.

■ The contentions of the appellant that the following rulings of the trial court constitute prejudicial error are also untenable:

> "Q. Now had you been offered a contract for a teaching position say at Flaxton—would you have accepted it at the same salary that you received at Velva?
>
> "MR. KENNER: Object to that question as being speculative.
>
> "THE COURT: Sustained.
>
> "Q. What did you expect, Mr. Miller, as to salary if you were to have obtained employment as a teacher at another school?
>
> "MR. KENNER: Object to question, no foundation for Mr. Miller stating what some offer of job would be.
>
> "THE COURT: Sustained.
>
> "Q. Mr. Miller, what would be the minimum salary you would have accepted as a teacher?
>
> "MR. KENNER: Object again, your Honor, on the same grounds.
>
> "THE COURT: Sustained.
>
> "Q. What was maximum salary you would have accepted?
>
> "MR. KENNER: Same objection.
>
> "THE COURT: Sustained."

Transcript, line 4 to line 25, page 74.

As the evidence indicated that there was no employment for which the teacher was qualified in any city at any wage, other than the part time work which he acknowledged having performed, the questions designed to elicit whether the teacher would have accepted employment at a certain city or designed to discover at what wages the teacher would have worked for another school district, were wholly immaterial.

■ On the question of the measure of damages, the appellant refers the court to Section 32-03-09 of the North Dakota Century Code, which provides:

> " * * * No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin."

The appellant contends that as at the time of the trial on April 5, the damages accruing from then until June, which was the end of the school term, were not clearly ascertainable, the correct rule should be that damages are not recoverable beyond the date of the judgment.

In support of its contention, it points out that the trial court stated that there is a division of authority on the question of recovery where suit is brought before the term of employment has expired, citing: 56 C.J.S. Master and Servant § 58e. (1948); 35 Am.Jur., Master and Servant, Sec. 56 (1941); and 78 C.J.S. Schools and School Districts § 216 (1952).

In addition thereto, the appellant cites the case of Shiels v. Baltimore & O. R. Co., D.C., 154 F.Supp. 917, 7 Cir., 254 F.2d 863, certiorari denied 358 U.S. 846, 79 S. Ct. 71, 3 L.Ed.2d 80.

After a careful review of the authorities cited, we are of the opinion that the trial court was correct in permitting the respondent teacher to recover damages for the whole term less the amount of wages earned and reasonably expected to be earned in the parking lot part time employment. See Smith v. Pallay, 130 Or. 282, 279 P. 279, at 282, where the Oregon court said:

"It is clear from the evidence that defendants' wrongful discharge of plaintiff and their refusal to further perform the contract upon their part was such a breach of the contract as to discharge the entire contract. In such case the rule is:

" '* * * If the breach for which the action is brought is such as to discharge the entire contract, all damages caused by such breach, including those which will arise with reasonable certainty after the trial, must be recovered in that action.' 2 Page on Contracts (2d Ed.) § 3197."

With less than two months of the school term left at the time of the trial, it was proper for the trial court to conclude, in light of the fact that the plaintiff teacher had not been able to secure employment of a similar kind or of any kind, other than part time parking lot employment, in the preceding three months subsequent to his discharge, that the damages for the remaining two months of the contract were "clearly ascertainable."

We therefore affirm the judgment of the trial court.

MORRIS, C. J., and STRUTZ, TEIGEN and BURKE, JJ., concur.