Cynthia SELLAND, Plaintiff
and Appellant,

v.

FARGO PUBLIC SCHOOL DISTRICT
NO. 1, a public corporation,
Defendant and Appellee.

Civ. No. 9528–B.

Supreme Court of North Dakota.

Jan. 26, 1981.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for defendant and appellee; argued by Jack G. Marcil, Fargo.

ERICKSTAD, Chief Justice.

This case was previously before the court. *Selland v. Fargo Pub. Sch. Dist. No. 1*, 285 N.W.2d 567 (N.D.1979). At that time, we decided that the appellant, Cynthia Selland, had been improperly terminated from her teaching position pursuant to the mandatory retirement policy then in effect in the Fargo school district and was entitled to compensatory damages. On remand, the trial court found that Selland would have received $27,261 had she been allowed to teach from the period after the school district wrongfully terminated her until she was reinstated in November, 1979. From

this amount, the court deducted (1) social security benefits of $8,798.90, (2) pension benefits from teachers' retirement of $7,875.57, and (3) income from part-time employment at Moorhead State University in the amount of $2,700. This left $7,886.53 still owing to Selland.

The trial court also determined that Selland had not exercised reasonable diligence to secure other employment. The court, taking into consideration the failure to exercise reasonable diligence, awarded Selland $4,400.

At the trial, evidence was offered by Selland to show that, had she been able to continue teaching until age 70, she would have received a substantially larger monthly annuity than she will be entitled to when she does retire because she accepted benefits when she was wrongfully terminated and, pursuant to the Teachers' Fund for Retirement Act, is precluded from participating wholly under the new rates which went into effect three months before she was reinstated by the school district.

Selland contended that the school district should repay the benefits to the Teachers' Fund for Retirement which she had received. Arguably, this would entitle her to an increased annuity when she does retire. The school district asserted that this would, in effect, give Selland a double recovery. The court determined that the repayment issue was moot because, had Selland exercised reasonable diligence to mitigate, she would not have received social security or teachers' retirement funds. Selland asserts two issues on appeal:

"I.

"Does the evidence sustain the finding of the Court that the Plaintiff failed to mitigate damages and is such finding clearly erroneous?

"II.

"Did the Court err in failing to require the school district to repay the Teachers' Fund for Retirement or to give damages to the Plaintiff as a result of lost annuity under Teachers' Retirement?"

## I. FAILURE TO MITIGATE

 The proper measure of Selland's damages is the contract price less what she earned, or could have earned, by the exercise of reasonable diligence in seeking other similar employment subsequent to her wrongful termination. *Meier v. Foster School District No. 2,* 146 N.W.2d 882, 887 (N.D.1966); *Miller v. South Bend Special School District No. 1,* 124 N.W.2d 475, 479 (N.D.1963); *Seher v. Woodlawn School District No. 26,* 79 N.D. 818, 59 N.W.2d 805, 811 (N.D.1953).

 The burden is upon the school district to prove that Selland has failed to exercise reasonable diligence in seeking employment to minimize damages. *Miller v. South Bend Special School District No. 1, supra,* 124 N.W.2d at 480. Selland contends that this requires the school district to prove that the teacher could have obtained similar employment in the vicinity by the exercise of reasonable diligence. We agree. In *Vallejo v. Jamestown College,* 244 N.W.2d 753 (N.D.1976), we said, "[I]n a case of a breach of contract, the injured party must make every reasonable effort to minimize the damages suffered." 244 N.W.2d at 759.

 As we previously said, the school district has the burden of proving that Selland did not exercise reasonable diligence to obtain employment. The evidence introduced reveals that Selland did not (1) update a résumé, (2) avail herself of any employment services, (3) contact the placement bureau of the school from which she was graduated, or (4) do what a teacher would normally do when seeking employment. Her efforts to find employment consisted of reviewing the want ads in the local newspaper and of inquiring of acquaintances whether or not there were any openings in some of the local school systems.

From this evidence, the trial court determined that Selland had not exercised reasonable diligence. We will not overturn such a finding unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. When the evidence in this case is reviewed, we are not "left with a definite and firm conviction"

that the court erred in determining that Selland had not exercised reasonable diligence in obtaining similar employment. *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

This finding is, however, of no consequence in this case because the school district failed to establish that there was comparable employment available in the locality. Had that been established, the amount of the salary in comparable employment in the locality would have become significant. *Kenaston v. School Administrative District No. 40,* 317 A.2d 7, 11 (Me.1974) (plaintiff's failure to attempt to obtain employment in the area was irrelevant when employer did not sustain burden of showing employment suitable for plaintiff was available).

## II. AWARD OF DAMAGES

In its findings of fact, the trial court stated that had Selland exercised reasonable diligence she would not have received any benefits from either teachers' retirement or from social security. Although the evidence clearly shows that Selland failed to exercise reasonable diligence in finding similar employment, it does not reveal that had Selland exercised such reasonable diligence she would have obtained similar employment in the locality. The testimony of Dr. Eldon Gade regarding teaching positions revealed that the closest, open teaching position to Fargo was 78 miles away. No effort was made by Gade to determine the hiring policies of that school district regarding age. Such a policy would be significant as Selland was then over 65 years of age.

 In order to mitigate damages, a teacher is not required to seek employment in another line of service other than teaching. *Edgecomb v. Traverse City School District,* 341 Mich. 106, 67 N.W.2d 87, 92 (1954). Selland also was not required to go to a different locality. *Zeller v. Prior Lake Public Schools, Ind. School Dist. No. 719,* 259 Minn. 487, 108 N.W.2d 602, 606 (1961).

■ Reviewing the evidence, we find that there is insufficient evidence to support the trial court's finding that had Selland exercised reasonable diligence she would have found a teaching position within the Fargo vicinity. A finding that she could have found such employment is clearly erroneous. *In re Estate of Elmer, supra,* 210 N.W.2d at 820. The trial court determined that had Selland found other employment she would have received $400 per month less than what she would have received from the Fargo Public School District had she not been discharged. The court then awarded $4,400 for the 11 months Selland was wrongfully terminated. This award was based upon the court's determination that had Selland exercised reasonable diligence she would have found employment at $400 less than she was receiving from the school district. As we said, however, such a finding is not supported by the evidence as the positions possibly available were not within the vicinity but were approximately 80 or more miles away. Accordingly, the court's award must be reversed.

In *Vallejo,* we said that, on remand, the trial court should base its award of damages on the contract price "less any sum actually earned or which *might have* been *earned* by plaintiff by the exercise of reasonable diligence in seeking and obtaining other similar employment." [Emphasis added.] *Vallejo v. Jamestown College, supra,* 244 N.W.2d at 759. In this case, there is no evidence as to what Selland might have earned because there is no evidence that there was similar employment she might have obtained in the vicinity. Accordingly, the judgment must be amended to add the difference between $7,886.53 and $4,400 to the judgment, or, in other words, to provide for a judgment in the amount of $7,886.53, subject to what is hereinafter stated.

■ Although the trial court determined that the issue of repayment was moot, it still decided that the benefits should not be repaid. The court determined that repayment of social security would not benefit Selland and, furthermore, that she had abandoned the request by failing to present evidence on the issue. As to repayment of the teachers' retirement benefits, the court determined that such benefits should not be repaid by the school district.[1]

As these are conclusions of law, they are fully reviewable. *Northwestern Bell Telephone Co. v. Board of Commissioners of Fargo,* 211 N.W.2d 399 (N.D.1973).

In a breach of contract action, damages are governed by Section 32–03–09, N.D.C.C.

> "*32–03–09. Measure of damages for breach of contract—Damages must be certain.*—For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be

1. "This Court finds that on the issue of mitigating damages, the change of the pension payments will not be considered for any one of the following reasons: (a) The change was effective a mere three months before her reemployment by Defendant. (b) Considerable speculation and conjecture would have to be resorted to as to the difference in pension payments in that we are unable to predict her length of teaching or the amount to be earned in future years. (c) This Court has no authority to order a third party to do something not permitted by law and under a situation where such third party is not a party to this lawsuit. (d) As previously found by this Court, the Plaintiff failed to mitigate damages and had she found another teacher's position, she would have had all the benefits of the new pension rates. (e)

That if such repayment is made, this Court would be extending damages to the ridiculous point of having the Defendant pay for damages based on a law not in effect at the time and which is not retroactive and such damages would be paid to benefit the Plaintiff in the distant future based on unknown contingencies. Damages must be clearly ascertainable to be given and this same axiom should be applied to the mitigation of damages. Mitigation of damages based on highly speculative nature are inconsistent with damages that are clearly ascertainable in nature. (f) In that Plaintiff has already received the retirement funds, for her to keep such funds and still compel Defendant to pay it back to the fund would mathematically double her compensatory damages to the extent of $7,875.57."

likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin." § 32–03–09, N.D.C.C.

In determining damages which should have been awarded a college teacher who had been wrongfully terminated, this court said: "The purpose of an award of damages is to compensate for an injury." *Vallejo v. Jamestown College, supra,* 244 N.W.2d at 760. In *Vallejo,* this court permitted proof of damages other than merely the contract price, where such damages arose from wrongful termination. 244 N.W.2d at 758–61.

In this case, Selland accepted teachers' retirement benefits under the Teachers' Fund for Retirement Act. Just three months prior to being reinstated, the Act was amended to allow increased benefits for those whose rights were vested. Section 15–39.1–10, N.D.C.C. As Selland had received benefits as a retired person and then resumed teaching, her future benefits will be payable under Section 15–39.1–19.1, N.D.C.C. Under Section 15–39.1–19.1, she will receive a smaller annuity when she does retire than she would have received had she not been wrongfully terminated. What she received should be refunded so that there is no hiatus in her employment and, consequently, so that she may ultimately retire with maximum benefits.

The school district argues that the amount to be repaid is uncertain, and also that there is no procedure under the Teachers' Fund for Retirement which allows for repayment of benefits received which would entitle a person who has accepted benefits under the old law to become eligible to receive increased benefits under the new law. Testimony was given by the executive director of the Teachers' Fund for Retirement, Fred Schmidt, that there were no provisions for repayment once a person has retired and returned to teaching.[2] He expressed reservations to such a procedure, but believed that the Board of Directors would allow Selland to participate under the new law allowing increased benefits considering the circumstances of this case. To place Selland in a position where she may ultimately claim the maximum benefits, the funds, including interest at the then prevailing rate, must be restored by the school district. *Davis v. Griffin-Spalding Cty., Ga., Bd. of Ed.,* 445 F.Supp. 1048 (N.D.Ga.1975).

Repayment of the Teachers' Fund for Retirement will not result in a double recovery. It will only result in Selland being placed in the position she would have been in had the school district not breached the contract. *Vallejo v. Jamestown College, supra,* 244 N.W.2d at 758.

In *Davis, supra,* the court determined that when the plaintiff was wrongfully terminated because of her age, she was entitled to the "sum . . . which equals the additional retirement benefits she would have received over her lifetime." 445 F.Supp. at 1055. The court also held that the retirement benefits she had received were properly deducted from the back salary to which she was entitled. In this case, having taken the position that a better remedy is available from a restoration of the funds, we conclude that the amount of the retirement benefits, with interest at the then prevailing rate, should be paid by the school district directly to the Teachers' Fund for Retirement.

Selland's right to the contract price entitled her to continued retirement benefits for the period during which she was wrongfully terminated. The amounts which would have been assessed to Selland's salary for contribution to the Teachers' Fund for Retirement should be deducted from her recovery and the school district should pay

---

2. Repayment of the fund is statutorily provided for in one circumstance:

"*15–39.1–15. Withdrawal from fund—Return to teaching.*—Any teacher who has withdrawn from the fund as set forth in this chapter may, by returning to teach one full school year in a public school or state institution of this state, regain credit for prior teaching by repaying to the fund, with interest, at a rate to be set by the board, the amount which was returned to him on withdrawal." § 15–39.1–15, N.D.C.C.

its contributing share. *Mass v. Board of Ed. of San Francisco Unified School Dist.,* 61 Cal.2d 612, 39 Cal.Rptr. 739, 394 P.2d 579 (1964).

■ As for the social security benefits, however, in *Davis* the court said that the plaintiff might be required to reimburse the government for at least part of the money she received from social security. Citing to 42 U.S.C. § 404(c); 20 C.F.R. §§ 404.505 et seq. These sections govern repayment of social security benefits when there is an overpayment if a recipient earns in excess of the minimum amounts set by statute. Because of this, the court, in *Davis,* held that the social security benefits received should not be deducted from the back wages.

In this case, Selland has introduced no evidence, nor addressed the issue in her brief, except to ask for repayment of social security "to the extent that it is advantageous to the appellant." Because Selland has not demonstrated how she is injured by this deduction as it may relate to future benefits, we affirm the trial court in its handling of the social security payments.

The trial court's determination that Selland failed to exercise reasonable diligence in seeking similar employment is affirmed. The court's award of damages, however, is reversed. On remand, damages and repayment of the Teachers' Fund for Retirement shall be in accordance with the foregoing opinion. Affirmed in part and reversed in part.

SAND and PAULSON, JJ., and NORBERT J. MUGGLI, District Judge, concur.

MUGGLI, District Judge, sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Justice, dissenting.

This case is based upon a "wrongful non-renewal" of a teacher's contract—not a breach of contract. The majority opinion (1) fails to apply Rule 52(a), NDRCivP, in the manner in which I would apply it; (2) confuses the principles that ought to govern mitigation; and (3) in effect, awards damages to a non-party. Emotionally I can sympathize with Selland, the school board, the taxpayers, and the administrator of the Teachers Fund for Retirement.

The law of this State is expressed in majority opinions. My views have not always coincided with the majority in Rule 52(a) cases and in teacher-school board disputes. I have previously expressed those views as best I could and, considering this court's workload, it would only delay the results for me to do more than note my disagreement.