GOODWIN, Appellant v. BENNETT COUNTY HIGH SCHOOL IND. SCHOOL DISTRICT, et al., Respondents

(226 N.W. 2d 166)

(File No. 11413. Opinion filed February 21, 1975)

**Costello, Porter, Hill, Banks & Nelson,** Rapid City, for petitioner and appellant.

**Fredric R. Cozad,** Martin, for respondents.

DOYLE, Justice.

This action was commenced by the appellant, Clark Goodwin (Goodwin), against the Bennett County High School Independent School District and all members of the school board of said School District (School District). The action sought a writ of mandamus requiring the School District to permit Goodwin to

serve as a teacher of commercial subjects, and as head basketball coach, assistant football coach and head track coach in the high school operated by the School District, and further requiring the School District to classify Goodwin as a full-time permanent certified employee of the School District and reinstate him in his position as teacher and coach for the school year 1973-74, upon the same terms and conditions as Goodwin's employment contract with the School District for the school year 1972-73. A show cause order was issued by the court requiring the School District to offer Goodwin such an employment contract or to show cause why it had not done so. Such a contract was not offered and a hearing thereon was held by the court.

The court, after considering the issues, upon a stipulated statement of facts, [1] entered its order requiring the School District to offer Goodwin a contract of employment for the 1973-74 school year containing the same terms and conditions as Goodwin's 1972-73 contract with the School District "excepting only that the contract does not need to provide that the Petitioner (Goodwin) shall serve as head basketball coach, assistant football coach, and head track coach". It was the court's further holding that Goodwin's contract was to provide, as did his 1972-73 contract, for a salary of $8,976, and that Goodwin would teach

---

1. Summarized, the facts are: Goodwin was employed by the School District during the 1972-73 school year to teach commercial subjects, act as head basketball coach, assistant football coach and head track coach. After the team won the district basketball tournament and before the regional tournament it was determined that Goodwin was to take two student managers to the regional tournament, and, in violation of the school principal's directive, Goodwin took three student managers to such tournament. When contacted by the authorities Goodwin at first denied that the third student manager was present at the tournament; he later admitted the third student manager was there but stated that he had hitchhiked to the tournament. On several later occasions Goodwin specifically denied that he had been involved in the attendance of the extra student manager at the regional tournament. Furthermore, he contacted members of the team and other coaches in an effort to suppress the true facts from the authorities. It was determined that Goodwin had directly violated his instructions as a coach and, thus, the school board determined Goodwin's character was such that he should no longer be involved in coaching activities and in situations where he would be in charge of students away from the Martin locality. Moreover, while Goodwin did not receive written notice from the board of its intention not to renew his teacher's contract for the ensuing year, the matter was discussed fully with him by the board on at least three occasions during the months of March and April 1973.

commercial subjects and have the same incidental benefits as were provided in his previous contract. Goodwin appeals from that portion of the judgment, the effect of which was that the contract need not provide that he perform any of the coaching duties enumerated in his prior contract. The School District did not appeal from the portion of the judgment awarding Goodwin a contract of employment for the year 1973-74, stipulating that he teach commercial subjects for the same salary received during the previous year; thus, the sole question before the court on this appeal is: did Goodwin receive a contract "under the same terms and conditions as the contract for the then current year" as stipulated by SDCL 13-43-10. The focal point of Goodwin's argument embraces what is commonly called the South Dakota Continuing Teacher Contract Law as set forth in SDCL 13-43, with particular reference to SDCL 13-43-9.1, 13-43-10 and 13-43-11.[2] It was stipulated that Goodwin had been employed

2.    SDCL 13-43-9.1: "At least twenty days prior to the giving of the notice set forth in SDCL 13-43-10, the board of education shall notify in writing a teacher of its intention not to renew the teacher's contract or the superintendent or school administrator shall so notify the teacher of any intention on his part to recommend to the board of education that it not renew the teacher's contract; and within said twenty-day period, the board of education, or if applicable, the superintendent or other administrator, shall, as soon as practicable and upon written request of the teacher, make available to the teacher for review his personal evaluation file, advise him in writing of the reasons on which the intention not to renew or not to recommend for renewal is based, and afford the teacher an informal, private conference before the board, or, if applicable, before the superintendent or other administrator.

"This provision shall in no manner restrict the board of education in taking action, or the superintendent or other school administrator in making recommendations to the board, based on relevant circumstances which occur within said twenty-day period, but, in such event, notice thereof shall be given to the teacher as soon as practicable."

SDCL 13-43-10: "Any teacher who has been employed by any board of education of any school district in this state for at least two successive years shall be notified in writing by the board of education on or before the first day of April of the current year of the board's determination not to renew the teacher's contract for the ensuing school year, and failure to give such written notice on or before said date shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. Different terms and conditions may be mutually agreed upon by the board and teacher at any later time."

SDCL 13-43-11: "After an offer has been created under the provisions of § 13-43-10 the board must by May first of the current school year submit a written contract of employment for the ensuing school year to the teacher

for two successive years prior to the 1973-74 school year and, consequently, was a tenured teacher within the purview of SDCL 13-43-10. It was conceded that Goodwin did not receive the written notifications required by SDCL 13-43-9.1 or 13-43-10.

This court in Blood v. Spring Creek Number 12, Common School Dist., 1960, 78 S.D. 580, 105 N.W.2d 545, held, absent the notification required by the tenure act, "A contract of employment for the succeeding year arises and exists by operation of law"; consequently, Goodwin's contract to teach was automatically renewed for the school year 1973-74.

■ SDCL 13-8-39 provides that school boards have the general charge, direction, and management of the schools of the district. While Goodwin was entitled to an automatic renewal of his contract to teach, he is nevertheless subject to the authority of the school board under its general powers to direct and manage the schools of the district and the employees employed therein.

■ A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. The tenure laws do not interfere with the general power and right of school authorities to assign teachers to particular classes and to particular schools in accordance with their judgment and desire *reasonably exercised.* Such laws do not take from school authorities their incidental powers, originally to assign and subsequently to transfer a teacher to such classroom, such building, and such division as it may determine to be for the best interest of the school as long as the teacher is not thereby demoted in violation of the laws. Mitchell v. Board of Trustees, 1935, 5 Cal.App.2d 64, 42 P.2d 397; State ex rel. Ging v. Board of Education of City of Duluth, 1943, 213 Minn. 550, 7 N.W.2d 544. The power to transfer or reassign must be exercised in good faith and for the best interest of the school district, and must not be on an arbitrary and capricious basis or for the purpose of compelling a teacher's resignation. State ex rel. Ging v. Board of Education of City of Duluth, supra.

and notify such teacher that the offer to accept such contract must be accepted within fifteen days by signing of such contract by the teacher. If such teacher does not sign such contract within fifteen days the offer created under the provisions of § 13-43-10 is hereby deemed to be revoked."

■ Under the facts, as stipulated in this case, no such abuse of discretion appears. Consequently, the school board had the power and authority to reassign and change the duties of Goodwin under the terms and conditions of his contract.

The judgment and order of the trial court is affirmed.

DUNN, C. J., and WINANS and COLER, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).
SDCL 13-43-10 provides in part that:

"* * * failure to give such written notice on or before said date [April 1] shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. Different terms and conditions may be mutually agreed upon by the board and teacher at any later time."

Appellant did not receive for the year 1973-74 a contract under the same terms and conditions as his 1972-73 contract. In order to give any meaning to the last sentence of SDCL 13-43-10, supra, he was entitled by operation of law to the same contract that he had for the then current year. The continuing contract law is a limitation upon the power of a school district to contract with its teachers. Carlson v. School Dist. No. 6 of Maricopa County, 12 Ariz.App. 179, 468 P.2d 944. By failing to comply with the continuing contract statutes, defendant school board waived its opportunity to make unilateral changes in defendant's contract based upon occurrences preceding the dates on which appellant was entitled to notice under the statutes.* Whether a school board has power to assign teachers to particular classes and to particular schools when unforeseen exigencies arise subsequent to the effective date of a teacher's contract is a question not before us.

---

* That the school board discussed the contract with appellant on several occasions is irrelevant. Blood v. Spring Creek Number 12, Common School District, 78 S.D. 580, 105 N.W.2d 545.

If appellant's conduct was so egregious that it rendered him unfit for further teaching duties, the school board had adequate remedies pursuant to SDCL 13-43-13 and 13-43-15. Having elected not to proceed under the provisions of SDCL 13-43-9.1 and 13-43-10, the school board should be bound by its election and prohibited from unilaterally modifying appellant's statutorily vested contract on the basis of circumstances known by the school board to have existed prior to the time appellant was entitled to notice under the continuing contract statutes.

I would hold that appellant was entitled to the relief he sought.